**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

AKO K. BURRELL,

                            Plaintiff,

   v.                                                                                          No. 9:21-CV-01165
                                                                                                  (GTS/CFH)
BRYAN MASON,[1] et al.,

                            Defendants.

_____

**APPEARANCES:**                                              **OF COUNSEL:**

AKO K. BURRELL
17-B-2994
Attica Correctional Facility
Box 149
Attica, New York 14011
Plaintiff pro se

Attorney General for the                                    MATTHEW GALLAGHER, ESQ.
State of New York                                           Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Ako K. Burrell ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York State Department of Corrections and Community

---

[1] The Court terminated the lead defendant following section 1915 review of plaintiff's complaint. See Dkt. No. 4 at 9-10. Accordingly, the Clerk is respectfully directed to amend the caption to reflect Bryan Mason, the next named still-remaining defendant, as the lead defendant.

[2] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

1

Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton C.F."), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Sergeant Bryan Mason, Correctional Officer ("C.O.") Justin Gordon, and C.O. Michael Deyo (collectively, "defendants") violated his constitutional rights under the Eighth Amendment. See Dkt. No. 1 ("Compl."). Presently before the Court is plaintiff's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 51. Defendants opposed the motion. See Dkt. No. 55-1. Plaintiff did not file a reply. For the following reasons, it is recommended that plaintiff's motion be dismissed.

## I. Background

On review of plaintiff's motion for summary judgment, the facts will be related herein in the light most favorable to defendants as the nonmoving party. See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record . . . to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

### A. Plaintiff's Recitation of the Facts

Plaintiff alleges that, "on September 9, 2021, at or about 9:00 AM," defendant Mason and defendant Deyo "approached [his] cell" and told him that his "mental health counselor want[ed] to see [him]." Compl. at 5, ¶¶12-13.[3] Plaintiff replied that he "never wrote to speak to her, nor was [he] given a callout, so what does she want with [him]?"

---

[3] Citations are to the pagination generated by CM/ECF, located in the header of each page.

2

Id. at 5, ¶13.  In response, Mason and Deyo "became irate, and hostile," threatened to spray plaintiff with mace, and yelled at him to "shut the fuck up" and "get dressed[.]"  Id. at 5, ¶¶13-14.  Plaintiff complied.  See id. at 6, ¶15.  Although he "was not under any sanctions to be restrained," Mason and Deyo put plaintiff in mechanical restraints, including "a waist-chain and handcuffs."  Id.

Mason and Deyo "escorted plaintiff" to the third floor of the Clinton C.F. Hospital Building.  Compl. at 6, ¶16.  Once in the waiting room, defendant Gordon told plaintiff to "sit down, and shut the fuck up[.]"  Id. at 6, ¶17.  Plaintiff went to "urinate, due to all the fear and anxiety caused from the defendants['] hostility, and threat of mace."  Id.  Gordon soon after followed, yelled at plaintiff for getting up, and said that Mason ordered him to "watch [plaintiff] for contraband[.]"  Id. at 6-7, ¶¶17-19 (Gordon yelled, "what the fuck are you doing? I thought I told you to stay put?").  "Upon exiting the bathroom," Gordon "yanked [plaintiff] by his waist chain" and brought him to a different room.  Id. at 7, ¶20.  "Once inside th[e] room, . . . plaintiff sat down, . . . Mason and Deyo appeared," and "Gordon left and returned with leg irons."  Id. at 7, ¶21.  "Gordon then applied the leg irons on plaintiff['s] legs/ankles, and then applied a lock type device, that secured plaintiff to the chair."  Id. at 7, ¶22.  "Mason then ordered 'a cavity search,' and told [Gordon and Deyo] to hold [plaintiff] down, and lower [his] pants."  Id. at 8, ¶23.  Gordon and Deyo subsequently "grab[ed] both [of plaintiff's] shoulders, . . . push[ed his] chest/torso onto the table of th[e] restraint chair," and undressed him.  Id. at 8, ¶24.  Once plaintiff's clothes had been removed, Mason accused plaintiff of discarding contraband in the bathroom.  See id. at 8, ¶25 (Mason "stated 'I'm going to ask you one time you piece of shit, what did you get rid of in that bathroom,' and

3

smacked [plaintiff's] buttocks"). When plaintiff denied the allegation, Mason ordered plaintiff to "spend the night here, in OBS."[4] Id. at 9, ¶26. Then, "Deyo and Gordon placed there [sic] elbows on plaintiff['s] neck, and back, keeping him steady," while Mason conducted a search, with his fingers, of plaintiff's anal cavity "for at least 30 seconds." Id. at 9, ¶27. Deyo then grabbed his keys and said, "[i]t seems tight down there . . . lets use [these] keys to open that tight little lock[.]" Id. at 10, ¶28. Mason proceeded to insert Deyo's keys into plaintiff's rectum for "about 10 seconds," and once the keys were removed, plaintiff "felt a ripp [sic]/tear." Id. Throughout this encounter, plaintiff "cr[ied] in agony" and pleaded with Gordon and Deyo to stop Mason, but his requests were ignored. Id. at 10, ¶29.

After the cavity search had concluded, a nonparty Office of Mental Health ("OMH") counselor entered the room. See Compl. at 10, ¶30. Defendants exited the room, and the counselor talked to plaintiff. See id. at 10-11, ¶¶30-32. After plaintiff's conversation with the counselor, defendants returned, unlocked plaintiff's restraints from the chair, and tightened his leg irons. See id. at 12, ¶33 (stating that the leg irons were so tight that they "cut[] off circulation and prevent[ed plaintiff's] achilles heel to flex"). Defendants ordered plaintiff to walk to a different room, and plaintiff "began to stand, [but] could not balance, took a step, and collapsed to the ground." Id. at 12, ¶ 34. Defendants laughed at plaintiff, and then told him to "stop fucking around and walk." Id. at 12, ¶¶34-35. Plaintiff attempted to walk again, but fell, and "explained that the [injury] from [the] assault, and the leg irons, prevented [him] from [walking.]" See id. at 12, ¶35. Nonparty C.O.s then "dragged" plaintiff to his cell. Id.

---

[4] "OBS" refers to an observation room within the Clinton C.F. Satellite Unit. See Dkt. No. 51-5 at 9.

On September 11, 2021, a nonparty C.O. served plaintiff a Tier III misbehavior report "for falling on the floor" with charges of "refusing a direct order" and "interference with [an] employee[.]"  Compl. at 13, ¶37.  A disciplinary hearing on this report was held, and October 15, 2021, the nonparty offender rehabilitation counselor found plaintiff guilty of the charges.  See id. at 14, ¶41.  She sanctioned plaintiff to, inter alia, 100 days in the special housing unit ("SHU").  See id.

Plaintiff claims to suffer "rectum damage," "mental health depression, suicide contemplation, and disorders," "a back injury," and "nerve damage" as a result of the alleged September 9, 2021, incident.  Compl. at 16-17; see also Dkt. No. 51-7 at 38-39.

### B. Defendants' Recitation of the Facts

On September 9, 2021, at approximately 8:20 AM, Mason "initiated an escort of [p]laintiff to the mental health unit," pursuant to an OMH referral.[5]  Dkt. No. 55-4 at 2, ¶8.  Mason "did not complete, nor was [he] involved in, the referral."  Id. at 2, ¶7.  Both Mason and Deyo then escorted plaintiff from his cell to OMH "without incident."  Id. at 2, ¶9; see Dkt. No. 55-2 at 2, ¶8.  "Once in OMH and an interview room was available," Mason, Deyo, and Gordon[6] escorted plaintiff to an interview room.  Dkt. No. 55-4 at 2, ¶11.  "As is protocol, [p]laintiff was secured to a restart chair in the interview room[, which] required ankle restraints being placed on [p]laintiff, and the chain between the restraints being secured to the bottom of the chair."  Id. at 2, ¶12; see also Dkt. Nos. 55-2 at 2, 55-3 at 2.

---

[5] A nonparty OMH counselor, Jill BelAir, made the mental health referral due to plaintiff being "assaultive" and exhibiting signs of "psychiatric decompensation."  See Dkt. No. 51-7 at 4-5.
[6] "Based on [defendants'] information and belief, . . . Gordon was working in OMH that day."  Dkt. No. 55-4 at 2, ¶10.

5

OMH staff then met with plaintiff, and after their conversation, the staff informed Mason that they were admitting plaintiff to OMH. See Dkt. No. 55-4 at 2, ¶18. "Upon being released from the restart chair, [Mason] gave [p]laintiff a direct order to stand up to be escorted to [an] observation . . . cell." Id. at 3, ¶19. "Plaintiff then stood up and immediately fell to the ground." Id. at 3, ¶20. Mason subsequently directed Deyo and a nonparty C.O. "to assist [p]laintiff to his feet, which they did." Id. at 3, ¶21. "Once on his feet, [p]laintiff attempted to fall again, feigning that he could not stand." Id. at 3, ¶22. Mason "gave [p]laintiff a direct order to stand and walk[, but p]laintiff failed to comply." Id. at 3, ¶23. "As a result of [p]laintiff's failure to comply with a direct order, [Mason] ordered . . . Deyo [and nonparty C.O.s] to escort [p]laintiff to [an observation] cell." Id. at 3, ¶24. Deyo and the nonparty C.O.s "used situation-appropriate body holds to escort [p]laintiff to the observation cell." Id. at 3, ¶25. "The escort went without further incident." Id. at 3, ¶26.

Defendants all assert that "[a]t no time during [their] interactions with [p]laintiff on September 9, 2021 did [they] assault [p]laintiff, nor did [they] observe anyone else assault [p]laintiff." Dkt. Nos. 55-2 at 3, 55-3 at 2, 55-4 at 3. Specifically, Mason declares that "[a]t no time did [he] assault [p]laintiff or penetrate [plaintiff's] anus with [his] fingers or any objects." Dkt. No. 55-4 at 2, ¶16. Gordon and Deyo further declare that "[a]t no time did [they] assault [p]laintiff or hold him down in any fashion." Dkt. Nos. 55-2 at 2, 55-3 at 2.

## II. Legal Standard

6

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citation omitted); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court . . . must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); see also Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[]" . . . .

Id. (citations omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### III. Discussion

Based on the alleged September 9, 2021, incident, plaintiff brings an Eighth Amendment claim against Mason for sexual assault. See Compl. at 8-10, 17; see also Dkt. No. 51-3 at 4-5. Plaintiff also brings an Eighth Amendment failure to intervene claim against Gordon and Deyo. See Compl. at 8-10, 17; see also Dkt. No. 51-3 at 4-5. Plaintiff "seeks summary judgment on his claims," and defendants oppose plaintiff's motion. Dkt. No. 51-3 at 4; see Dkt. No. 55-1.

### A. Sexual Assault Claim

8

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); see U.S. CONST. AMEND. VIII; see also Estelle v. Gamble, 429 U.S. 97, 102 (1976) (explaining that the Supreme Court has "held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'") (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)). To state an Eighth Amendment claim, a plaintiff must establish both objective and subjective elements. See Crawford, 796 F.3d at 256. "First, the alleged 'punishment' must be, 'objectively, sufficiently serious.'" Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994), and citing Branham v. Meachum, 77 F.3d 626, 630 (2d Cir. 1996)). Second, the "prison official must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297) (additional citations omitted). "Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." Boddie, 105 F.3d at 861.

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Crawford, 796 F.3d at 257 (citing Boddie, 105 F.3d at 860-61). To satisfy the objective prong, a plaintiff generally must allege "physical contact" or "egregious sexual conduct." Holland v. City of New York, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016) (citing Smith v. Roberson, No. 9:15-CV-0930 (DNH/TWD), 2016 WL 1056588, at *3 (N.D.N.Y. Mar. 16,

9

2016)). [7] When analyzing the subjective prong, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate."  Crawford, 796 F.3d at 257–58.[8]  "To categorize the actions one way or another, courts look to the 'timing' of the search, the 'comments made' during the search, and 'subsequent comments made by the officers.'"  Haywood v. Annucci, No. 18-CV-10913 (KMK), 2022 WL 4357648, at *11 (S.D.N.Y. Sept. 20, 2022) (quoting Shepherd v. Fisher, No. 08-CV-9297, 2017 WL 666213, at *18 (S.D.N.Y. Feb. 16, 2017)).

Here, plaintiff alleges that Mason "ordered 'a cavity search,' and told C.O. Gordon and Deyo to hold [him] down, and lower [his] pants."  Compl. at 8, ¶23.  Plaintiff contends that, once his pants were lowered, "he felt his buttocks get spread wide, and felt a sharp rupture/puncture into his [anus], and then felt a finger, then two, inside his bowels, moving around for at least 30 seconds."  Id. at 9, ¶27.  Plaintiff further contends that Mason then used "the set of several keys [to] enter [his] rectum, . . . [which] lasted about 10 seconds, and was removed quickly[.]"  Id. at 10, ¶28.  He states that, after the assault, Mason laughed at him.  See id. at 12, ¶34.  Plaintiff argues that Mason violated his Eighth Amendment rights, particularly because "Mason was not acting within the scope of his employment when he assaulted plaintiff."  Dkt. No. 51-3 at 5.

---

[7] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.
[8] "[P]rison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches," and, "[i]ndeed[,] prison security and safety may require frequent searches of an intensely personal nature."  Crawford, 796 F.3d at 258 (citing Bell v. Wolfish, 441 U.S. 520, 560 (1979)).  When the alleged misconduct arises in the context of a legitimate penological search, a plaintiff may therefore be unable to satisfy the subjective prong, as the defendant performed the conduct at issue in "a good-faith effort to maintain or restore discipline" rather than to "maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).

First, plaintiff fails to establish that there is no material issue of fact as to whether he suffered an "objectively, sufficiently serious" constitutional violation. Boddie, 105 F.3d at 861 (internal quotation marks omitted); see Torres v. City of New York, No. 17-CV-6604, 2019 WL 7602181, at *9 (S.D.N.Y. Aug. 14, 2019) ("Courts in this circuit generally require that the plaintiff demonstrate that the defendants 'engaged in egregious conduct' to prevail on a challenge to a contraband search, and '[e]ven where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation.'") (quoting Holland, 197 F. Supp. 3d at 545, and Vaughn v. Strickland, No. 12-CV-2696 (JPO), 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013)), report and recommendation adopted, 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019). The Court recognizes plaintiff's factual allegations. See, e.g., Compl at 5-12. However, defendants offer a different version of events. See Dkt. No. 55 at 1-7. According to them, the alleged "cavity search" of plaintiff did not occur. See Dkt. Nos. 55-2, 55-3, 55-4. They maintain that they escorted plaintiff from his cell to OMH on September 9, 2021, "without incident." Dkt. No. 55-4 at 2, ¶9. In particular, Mason states that, upon escorting plaintiff back to his cell from OMH, plaintiff "failed to comply" with Mason's "direct order to stand and walk," and thus Deyo and nonparty C.O.s used "situation-appropriate body holds." Id. at 3. Mason asserts that the "escort went without further incident." Id. at 3, ¶26. Mason further declares that "at no time during [his] interaction with [p]laintiff on September 9, 2021, did [he] assault [p]laintiff, nor did [he] observe anyone else assault [p]laintiff." Dkt. No. 55-4 at 3, ¶28.

Thus, "the competing evidence rests on the credibility of [p]laintiff on one hand and [d]efendants on the other." Reed v. McGrath, No. 9:19-CV-1203 (GTS/TWD), 2021 WL 6750625, at *4 (N.D.N.Y. Dec. 22, 2021), report and recommendation adopted, 2022 WL 252170 (N.D.N.Y. Jan. 27, 2022). "In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the nonmoving party requires the Court to credit [d]efendants' version of the events for purposes of [p]laintiff's motion for summary judgment." Id. (citing Coleman v. Racette, No. 9:18-CV-0390 (MAD/CFH), 2021 WL 4312392, at *8 (N.D.N.Y. May 27, 2021), report and recommendation adopted, 2021 WL 3508342 (N.D.N.Y. Aug. 10, 2021), and In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury and not a judge)). As such, given Mason's assertions, as the nonmoving party, he has raised an issue of fact as to whether the assault occurred. See Dkt. No. 55-4. Thus, it remains unclear as to whether plaintiff suffered an "objectively, sufficiently serious" constitutional violation. Farmer, 511 U.S. at 834.

Second, even assuming, arguendo, plaintiff's allegations satisfy the objective prong, plaintiff has failed to demonstrate that there is no material issue of fact as to whether to Mason acted with "a sufficiently culpable state of mind." Shepherd, 2017 WL 666213, at *18 (holding that the subjective prong was met in an Eighth Amendment sexual assault claim because "a reasonable jury could conclude that the physical contact was undertaken for [the defendant's] own sexual gratification, to humiliate [the inmate plaintiff], or both"); see Layne v. Panzarella, No. 19-CV-04531 (PMH), 2022 WL

12

2343184, at *6 (S.D.N.Y. June 29, 2022) (denying summary judgment in an Eighth Amendment sexual assault claim after finding "a genuine dispute of material fact as to the penological purpose of the alleged search").  Plaintiff has not alleged that Mason "harbored the subjective intent of sexual gratification[.]"  Haywood, 2022 WL 4357648, at *12.  Liberally construing plaintiff's complaint, he appears to allege that Mason acted with the intent to humiliate him.  See Compl. at 16-17.  However, as Mason denies that the alleged assault of plaintiff occurred, there remains an issue of fact as to whether Mason acted with the requisite subjective intent.  See Dkt. No. 55-1 at 6; see generally Dkt. No. 55-4.

Accordingly, as there is at least one question of fact regarding the alleged sexual assault, it is recommended that plaintiff's motion for summary judgment as to his Eighth Amendment sexual assault claim be denied.

### B. Failure to Intervene Claim

Generally, "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officials in their presence."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  "An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers."  Terebesi v. Torreso, 764 F.3d 217, 243-44 (2d Cir. 2014) (citing Anderson, 17 F.3d at 557).  A plaintiff prevails on a failure to intervene claim when: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  Jean-Laurent v. Wilkinson,

540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012) (summary order) (citations omitted); see also Rosen v. City of New York, 667 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (explaining that, in the failure to intervene context, "[a]n officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene.") (citations and quotation marks omitted).

Here, plaintiff asserts that Gordon and Deyo "pull[ed his] pants and undershorts down," "h[eld him] down," and "refus[ed] to stop and prevent [Mason's] assault[.]" Compl. at 17, ¶48.  Plaintiff further contends that Gordon and Deyo "assist[ed] with the assault," by "punching and choking plaintiff." Dkt. No. 51-3 at 4.  Plaintiff argues that Gordon and Deyo "owed a duty of reasonable care, to safeguard plaintiff from defendant Mason['s] assault" and that their conduct constitutes a violation of his Eighth Amendment rights.  Dkt. No. 51-3 at 4-5.  Plaintiff fails to demonstrate that there is no genuine issue of fact as to his failure to intervene claim.  The record provides differing accounts of what transpired on September 9, 2021.  See discussion supra Subsection III.A.  Gordon and Deyo both declare that they did not observe anyone assault plaintiff on September 9, 2021.  See Dkt. Nos. 55-2 at 3, 55-3 at 2.  They further state that "[a]t no time did [they] assault [p]laintiff or hold him down in any fashion" or "observe anyone else . . . hold[] him down."  See Dkt. Nos. 55-2 at 2, 55-3 at 2; see also Snead v. City of New York, 463 F. Supp. 3d 386, 400 (S.D.N.Y. 2020) (denying the plaintiff's motion for summary judgment on a failure to intervene claim where the extent of the defendants' involvement in the alleged incident was disputed).

Construing the evidence in favor of defendants as the nonmoving parties, plaintiff has not sufficiently established an underlying constitutional violation warranting summary judgment in his favor.  See discussion supra Subsection III.A.  "A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation."  Kayo v. Mertz, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021) (citing Wieder v. City of New York, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order)); see Matthews v. City of New York, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) ("[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim.") (citing Coleman v. City of New York, No. 07-CV-1051 (CM), 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010)).  These disputes of material fact mean that the Court cannot grant summary judgment in favor of plaintiff.  See Kistner v. City of Buffalo, No. 21-CV-526 (LJV/JJM), 2023 WL 144915, at *12 (W.D.N.Y. Jan. 10, 2023) (denying the plaintiff's motion for summary judgment on a failure to intervene claim where there were questions of fact as to the underlying alleged violations of the plaintiff's constitutional rights); see also Walker v. City of New York, No. 11-CV-00314 (CBA/JMA), 2014 WL 12652345, at *12 (E.D.N.Y Sept. 3, 2014) ("To prevail on a failure to intervene claim a plaintiff must demonstrate the existence of an underlying constitutional violation in which the defendant officer failed to intervene.") (collecting cases), aff'd, 638 F. App'x 29 (2d Cir. 2016) (summary order).

As there remains a question of fact as to whether there was an underlying constitutional violation to serve as the basis of plaintiff's failure to intervene claim, it is recommended that plaintiff's motion for summary judgment as to his Eighth Amendment failure to intervene claim be denied.

### IV. Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that plaintiff's Motion for Summary Judgment (Dkt. No. 51) be **DENIED**; and it is

**ORDERED**, that the Clerk amend the case caption to reflect Bryan Mason as the lead defendant; and it is further

**ORDERED**, that all parties be served a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[9]

Dated: January 19, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).